Richard C. Giller (SBN 117823)
rgiller@reedsmith.com
Ashley Inouye Rodriguez (SBN 307007)
arodriguez@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

Gregg A. Martin (SBN 135685)
gmartin@hkemlaw.com
Hamburg, Karic, Edwards & Martin LLP
1900 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (310) 552-9292
Facsimile: (310) 210-1479

Attornes for Plaintiff
**PAMC, Ltd., dba Pacific Alliance Medical Center**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

PAMC, Ltd., dba PACIFIC ALLIANCE MEDICAL CENTER,

Plaintiff,

vs.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

Defendant.

No.:

**COMPLAINT FOR DAMAGES:**

1. **BREACH OF CONTRACT;**
2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; and**
3. **DECLARATORY RELIEF**

[JURY TRIAL REQUESTED]

Plaintiff, PAMC, Ltd., dba Pacific Alliance Medical Center ("PAMC") alleges as follows:

## NATURE OF THIS ACTION

1. Plaintiff PAMC brings this lawsuit against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") under Policy Nos. 03-825-34-00 through 01-310-86-23 ("Subject Policies") issued by National Union to

PAMC covering the period February 28, 2015 through March 29, 2018, in connection with both a June 9, 2015, Department of Justice ("DOJ") "Federal Health Care Offense Subpoena" ("DOJ Subpoena") issued to PAMC and an earlier filed but related *Qui Tam* complaint that was filed under seal against PAMC on June 14, 2013 but about which PAMC was unaware until it received the DOJ Subpoena in March 2016.

2. National Union wrongfully and repeatedly denied insurance coverage to PAMC in connection with the DOJ Subpoena and the related *Qui Tam* complaint and has wrongfully refused to reimburse PAMC for the defense costs PAMC incurred in responding to the DOJ Subpoena and defending against the *Qui Tam* Action.

3. National Union has also unreasonably failed to view the facts and case authority submitted to it by PAMC in the light most favorable to providing coverage, as National Union was required to do by contract and law but, instead, improperly viewed the facts and circumstances solely through the lens of creating an artifice for denying coverage thereby breaching the implied covenant of good faith and fair dealing as detailed more fully below.

## A DESCRIPTION OF THE PARTIES

4. Plaintiff PAMC is, and at all times relevant hereto was, a California Corporation with its principal place of business located in the City of Los Angeles.

5. Based upon information and belief, Defendant National Union is, and at all times relevant hereto was, a Pennsylvania Corporation (with its headquarters in New York City), that offers property and casualty insurance products to individuals and businesses throughout the United States, including the County of Los Angeles.

6. Based upon information and belief, National Union was, at all relevant times hereto, authorized to transact the business of insurance in the State of California, and has transacted insurance business as such in this State and within this judicial district.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7. National Union has substantial commercial contacts and impact within this State and within this judicial district.

**JURISDICTION AND VENUE**

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332 (a) (2) because there is complete diversity of the citizenship of the parties and the amount in controversy is greater than $75,000, exclusive of interest, attorney fees, and costs.

9. This Court has personal jurisdiction over National Union because, among other reasons, it insured a resident of this State in this judicial district and its performance under the Subject Policies (described more fully below) was due, in whole or in part, within this State and this judicial district.

10. Further, PAMC brings this declaratory judgment action pursuant to 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, to determine an actual case or controversy regarding a claim for benefits and seeks a determination of the rights and obligations pertaining to the Subject Policies that were issued in this State and this judicial district.

11. Venue is proper in this judicial district, and division, pursuant to 28 U.S.C. §§ 1391 (a), (b) (2), and (c) because a substantial part of the events giving rise to this claim occurred (and/or a substantial part of property that is the subject of the action is situated in) this judicial district and National Union transacts insurance business in this judicial district.

**BACKGROUND FACTS AND GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

12. On June 14, 2013, a 47-page complaint captioned *United States of America and State of California, ex rel John Doe v. PAMC, Ltd., et al.*, was filed under seal in the United States District Court for the Central District of California, bearing Case No. CV13-04273, alleging violations of the Federal and California False Claims Acts ("*Qui Tam* Action").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

13.     As detailed below, PAMC was unaware of the existence of the *Qui Tam* Action until March 2016.

14.     The relator in the *Qui Tam* Action alleged that he was bringing the action on behalf of the United States and the State of California to "recover treble damages and civil penalties" from allegedly false claims "submitted to the Medicare and Medicaid programs as a result of the conduct of the defendants -- [PAMC and six identified physicians]."  (*See*, Paragraph 1 of the original complaint filed in the *Qui Tam* Action).

15.     The <u>only damages</u> sought by the Qui Tam relator were listed in the Prayer for Relief as follows:

1.     "For three times the dollar amount shown to have been wrongfully charged to and paid by the United States and by the State of California;"

2.     "For maximum civil penalties for all false records, statements, certifications and claims submitted to the United States and the State of California subject to being consistent with the Excessive Fines and Penalties Clause of the Eighth Amendment to the United States Constitution;"

3.     "For the maximum statutory *qui tam* share of the recovery obtained for the United States and the State of California;"

4.     "For all other damages allowed under law, including litigation expenses and reasonable attorneys' fees; and"

5.     "For such other and further relieve as the court deems just and proper."

16.     The original complaint filed in the *Qui Tam* Action did not request, nor did it seek as damages, the return of funds received by the United States or the State of California or any interest, fines, or penalties arising out of the return of such funds.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

17. On February 28, 2015, National Union issued Policy No. 38253400 covering the period February 28, 2015 to February 28, 2016 (the "2015-16 Policy") to PAMC. The expiration date of the 2015-16 Policy was later extended by endorsement to March 29, 2016.

18. The 2015-16 Policy was a renewal of National Union Policy No. 24203441 covering the previous year (the "2014-15 Policy").

19. On June 9, 2015, the DOJ sent a cover letter from Stephanie Yonekura, Acting United States Attorney and Sarah J. Heidel, Assistant United States Attorney together with the DOJ Subpoena to PAMC.

20. The cover letter accompanying the DOJ Subpoena expressly noted that the "enclosed subpoena has been issued in connection with an official criminal investigation conducted by federal authorities." The letter listed Federal Bureau of Investigation ("FBI") Special Agent Kathleen Kennedy as the contact person regarding the subpoena.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

21. In addition to seeking compliance under penalty of criminal prosecution, the DOJ Subpoena directed PAMC as follows:

a. "Because this subpoena relates to an ongoing criminal investigation, this Office requests that you not disclose the existence of or compliance with the subpoena for an indefinite period of time or until the Office notifies you that the investigation has been completed or until a court orders disclosure"; and

b. "Premature disclosure could impede the investigation and interfere with the enforcement of the law."

22. The clear import of these admonitions was that if PAMC prematurely disclosed the existence of, or compliance with, the DOJ Subpoena to anyone, the company and its employees could face criminal charges for obstruction of justice and/or interfering with an ongoing criminal investigation.

23. PAMC was not notified by the DOJ until January 5, 2017, that the criminal investigation had been completed which, according to the DOJ Subpoena and cover letter, was the first occasion where PAMC was relieved of its secrecy obligations.

24. On June 28, 2015, a First Amended *Qui Tam* complaint was filed under seal against PAMC. As with the original *Qui Tam* complaint, PAMC was unaware of the existence of the First Amended *Qui Tam* complaint until March 2016.

25. As with the original complaint filed in the *Qui Tam* Action, the only damages sought by the *Qui Tam* relator in the First Amended *Qui Tam* complaint were the identical five items of damages listed in the original Prayer for Relief as detailed in Paragraph 15, *supra*.

26. The First Amended *Qui Tam* complaint did not request, nor did it seek as damages, the return of funds received by the United States or the State of California or any interest, fines, or penalties arising out of the return of such funds.

27. On December 15, 2015, the Court unsealed the First Amended *Qui Tam* complaint. However, it was not until March 14, 2016, when a waiver of service of the First Amended *Qui Tam* complaint was filed with the Court, that PAMC had notice of the existence of the *Qui Tam* Action. It would not have been practical for PAMC to have discovered the existence of the First Amended *Qui Tam* complaint before the waiver of service of suit was filed and the complaint provided to PAMC on March 14, 2016.

28. Although retained outside private counsel for PAMC first became aware of the *Qui Tam* Action in March 2016, the admonitions relating to disclosure with respect to the DOJ Subpoena necessarily included the existence of the *Qui Tam* Action and remained in full force and effect without any qualification or exception. Thus, PAMC remained bound to follow the DOJ directive requiring it to avoid any "premature disclosure" (discussed above) of the DOJ investigation into matters the *Qui Tam* complaint also covered.

29.     On March 29, 2016, National Union Policy No. 38253400 expired and it was replaced by a National Union policy covering the period March 29, 2016 to March 29, 2017 (the "2016-17 Policy").

30.     On June 29, 2016, the 90-day post expiration notice period set forth in the 2015-16 Policy expired.

31.     On July 13, 2016, the Second Amended *Qui Tam* complaint was filed. On July 28, 2016, PAMC filed an answer to Second Amended *Qui Tam* complaint.

32.     As with the original and the First Amended complaint filed in the *Qui Tam* Action, the only damages sought by the *Qui Tam* relator in the Second Amended *Qui Tam* complaint were the identical five items of damages listed in the original Prayer for Relief as detailed in Paragraph 15, *supra*.

33.     The Second Amended *Qui Tam* complaint did not request, nor did it seek as damages, the return of funds received by the United States or the State of California or any interest, fines, or penalties arising out of the return of such funds.

34.     On September 26, 2016, a proposed Third Amended *Qui Tam* complaint was filed.  On October 14, 2016, PAMC filed an answer to Third Amended *Qui Tam* complaint.

35.     As with the original, First and Second Amended complaints filed in the *Qui Tam* Action, the only damages sought by the *Qui Tam* relator in the Third Amended *Qui Tam* complaint were the identical five items of damages listed in the original Prayer for Relief as detailed in Paragraph 15, *supra*.

36.     The Third Amended *Qui Tam* complaint did not request, nor did it seek as damages, the return of funds received by the United States or the State of California or any interest, fines, or penalties arising out of the return of such funds.

37.     On January 5, 2017, PAMC received a letter from the DOJ indicating that "based on the information currently known to it … this Office does not presently intend to pursue criminal charges against PAMC or its employees for conduct that was the subject of that investigation." This was the first time PAMC had received any

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

indication from the DOJ that it might be allowed to discuss anything related to the DOJ investigation into the matters covered by the *Qui Tam* complaint without transgressing the premature disclosure instructions it had received from the DOJ.

38. On February 11, 2017, PAMC and the *Qui Tam* Relator participated in mediation during which the parties ultimately reached a settlement. On February 15, 2017, a Notice of Settlement was filed by *Qui Tam* Relator.

39. On March 29, 2017, the 2016-17 Policy expired and was replaced by National Union Policy No. 01-310-86-23 covering the period March 29, 2017 to March 29, 2018 (the "2017-18 Policy").

40. On April 20, 2017, PAMC provided notice of the DOJ Subpoena and the *Qui Tam* Action (in its various iterations) to the Jules Berlin agency, and thus to National Union within the Policy Period and the 90-day post expiration notice period set forth in the 2016-17 Policy.

41. On April 27, 2017, National Union acknowledged PAMC's claim submission.

42. On May 16, 2017, National Union denied outright all coverage for the DOJ Subpoena and the Qui Tam Action. In denying coverage, National Union provided the following rationale:

a. The DOJ Subpoena is not a "Claim" as that term is defined in the 2015-16 Policy.

b. Even if the DOJ Subpoena constituted a "Claim" under the 2015-16 Policy, it was not timely reported to National Union under that Policy.

c. Any fees or costs PAMC incurred by responding to the DOJ Subpoena are not eligible for reimbursement under the 2015-16 Policy.

d. The *Qui Tam* Action was not timely reported to National Union under the 2015-16 Policy.

e.    Any fees or costs PAMC incurred by responding to or defending against the *Qui Tam* Action are not eligible for reimbursement under the 2015-16 Policy.

f.    The DOJ Subpoena and the *Qui Tam* Action were not "first made against an Insured during the 2017-18 Policy and, as a result, no coverage is available under that Policy."

43.    On June 27, 2017, the *Qui Tam* settlement agreement was fully executed by all parties.

44.    On June 29, 2017, the 90-day post expiration notice period set forth in the 2016-17 Policy expired.

45.    On July 6, 2017, the *Qui Tam* settlement proceeds were wired and a Status Update re Settlement was filed with the court in the *Qui Tam* Action.

46.    On July 7, 2017, a Joint Stipulation of Dismissal and Court Order dismissing action was filed in the *Qui Tam* Action.

47.    On August 30, 2017, counsel for PAMC sent a 10-page letter to National Union challenging the carrier's outright denial of coverage and the carrier's faulty coverage analysis.

48.    By that letter, PAMC provided National Union with citations to six (6) different cases across the country supporting PAMC's position that the DOJ Subpoena constituted a "Claim" as that term was defined in the National Union policies.

49.    PAMC's August 30, 2017 letter, also provided National Union with citations to an additional six (6) cases from across the country (two (2) of which involved National Union and its parent company AIG) supporting the position that, PAMC acted properly in following the DOJ admonitions against disclosing the existence of that subpoena (and the possible criminal consequences of non-compliance) such that PAMC, did in fact, provide timely notice to National Union of the DOJ Subpoena and *Qui Tam* Action once it became clear that PAMC was relieved of its secrecy requirements.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

50. By letter dated September 20, 2017, counsel for National Union responded to PAMC's August 30, 2017 letter dismissing, out of hand, all of the arguments and case authority PAMC had provided. In its September 20 letter, National Union reiterated its outright denial of coverage for any aspect of the DOJ Subpoena or the *Qui Tam* Action.

**THE NATIONAL UNION INSURANCE POLICIES**

51. National Union issued to PAMC a "Management Liability, Professional Liability and Crime Coverage for Private Companies" insurance policy entitled "PrivateEdge Plus," bearing Policy No. 03-825-34-00 covering the period February 28, 2015 to March 29, 2016. A true and correct copy of the 2015-2016 Policy is attached hereto as Exhibit "A." The 2016-17 Policy renewal is identical in all material respects.

52. The declaration page of the 2015-2016 Policy expressly notes that it is a "Replacement of Policy Number 24203441."

53. The following notation also appears on the Declarations page of the Subject Policies, set out in capital letters and in bold print: "**COVERAGE WITHIN THIS POLICY IS *GENERALLY LIMITED* TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER *AS THE POLICY REQUIRES***." (Bold emphasis in original, italicized and underlined emphasis added).

54. National Union, and National Union alone, chose to use the term "generally limited" (implicitly advising the policyholder that exceptions existed) as opposed to "expressly limited" to advise PAMC that coverage was generally limited to losses from claims first made against PAMC and reported to National Union during the policy period. Here, National Union advised PAMC that any claim must generally be reported "as the policy requires."

55. Pursuant to the "Notice/Claim Reporting Provisions Amended" as set out in Endorsement No. 7, the Policy states:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"The **Insureds** shall … give written notice to the **Insurer** of any **Claim** made against an **Insured** … as soon as practicable after: (i) the **Claim** is reported to or first becomes known by the *Human Resource Department, or Office of General Counsel [at PAMC*] (or if no such Office or Department exists, than the *equivalent Office or Department [at PAMC]*); and upon the earliest occurrence of the following:

(i) The **Claim** is or is sought to be certified as a class action; or

(ii) The **Claim** is brought by more than one claimant or is sought to be consolidated with another **Claim** brought by another claimant;

(iii) The **Claim** alleges sexual harassment by a duly elected or appointed corporate director or officer of the Company; or

(iv) The Total **Loss** (including **Defense Costs**) of the Claim is reasonably estimated by the *Human Resources Department or Office of General Counsel [at PAMC*] (or if no such Office or Department exists, than *the equivalent Office or Department [at PAMC]*) to exceed 50% of the applicable Retention amount stated in Item 3 of the Declarations [$100,000];

or (ii) the **Crisis Management Event** commences, but in all events a Claim must be reported no later than either:

(i) anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(ii) within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

(Bold emphasis in original, signifying a defined term in the Subject Policies; italicized and underlined emphasis added).

56. Pursuant to the insuring agreements set forth in the Directors and Officers ("D&O") Coverage Section of the Subject Policies, National Union agreed to, among other things, "pay the **Loss** of the **Company** [PAMC] arising from a "**Claim** made against the **Company**, or … [a] **Claim** made against an **Individual Insured** … for any **Wrongful Act**…." (Bold emphasis in original).

57. The term "**Loss**" in the Subject Policies is defined as: "'**Loss'** means damages, judgments, settlements, pre-judgment and post-judgment interest … and **Defense Costs**; provided, however, **Loss** shall not include: (i) ***civil or criminal fines or penalties***…. **Loss** shall specifically include … punitive, exemplary and ***multiple damages***." (Bold emphasis in original, signifying a defined term in the Subject Policies; italicized and underlined emphasis added).

58. The Subject Policies further defined "**Loss**" as follows: "[C]overage under this **D&O Coverage Section** for punitive, exemplary and ***multiple damages*** is subject to any applicable **D&O Punitive Damages Sublimit of Liability** or **Shared Punitive Damages Sublimit of Liability**. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and ***multiple damages***." (Bold emphasis in original, signifying a defined term in the Subject Policies; italicized and underlined emphasis added).

59. National Union and National Union alone chose to use both the phrase "civil or criminal fines or penalties" (to describe excluded Losses) and the phrase "multiple damages" (to described covered Losses) and, in so doing, demonstrated an intent for the latter phrase to mean something different from and in addition to the former phrase. As a result, a plain reading of covered "multiple damages" (giving effect to all terms in the policies) distinguishes that term from "fines or penalties."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

60. The phrase "**D&O Punitive Damages Sublimit of Liability**" is defined as the "**D&O Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations." There is no Item 7(c) of the Declarations and, thus, no **D&O Punitive Damages Sublimit of Liability**. (Bold emphasis in original).

61. The phrase "**Shared Punitive Damages Sublimit of Liability**" is defined as the "**Shared Punitive Damages Sublimit of Liability**, if any, stated in Item 7(c) of the Declarations." (Bold emphasis in original). Notwithstanding such reference, there is no Item 7(c) of the Declarations and, thus, no **Shared Punitive Damages Sublimit of Liability**.

62. Pursuant to Endorsement No. 8, entitled "For-Profit Health-Care Organization Amendatory Endorsement (Antitrust and Failure to Maintain Insurance Exclusions Deleted) (D&O Coverage Section)" National Union purported to amend certain "Definitions" contained within the D&O Coverage Section. Subpart (c)(iii) of Endorsement No. 8, entitled "Governmental Funding Defense Cost Coverage" states:

> "**Loss**" shall not include the return of funds which were received by any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; provided, however, with regard to **Claims** for **Wrongful Acts** arising out of the return, or request to return such funds, this **D&O Coverage Section** shall pay **Defense Costs** up to an amount not to exceed $1,000,000 ('**Government Funding Defense Costs Sublimit of Liability**')…."
>
> (Bold emphasis in original).

63. As noted above, nowhere in the original, first, second or third amended complaints filed in the *Qui Tam* Action did the relator request or seek as damages, the return of funds received by the United States or the State of California or any interest, fines, or penalties arising out of the return of such funds.

64. The term "**Claim**" in the Subject Policies is defined as:

**"'Claim'** means:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

i. a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

ii. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(1) service of a complaint or similar pleading;

(2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3) receipt or filing of a notice of charges; or

iii. a civil, criminal, administrative or regulatory investigation of an **Individual Insured:**

(1) once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition 2(b)(ii) may be commenced; or

(2) in the case of an investigation by the Securities Exchange Commission **("SEC")** or a similar state or foreign government authority, after:

(a) the service of a subpoena upon such **Individual Insured;** or

(b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured.**

"The term **'Claim'** shall also include any **Securities Claim** and any **Derivative Demand.**"

65. This definition is far from a paradigm of clarity. Instead, it consists of nearly 200 words, set out in three sub-parts [lettered (i) to (iii)] where two of those first level sub-parts contain an additional lettered sub-parts, and one of those second

level sub-parts contains two additional numeric third level sub-parts. In short, the definition as a whole is confusing and ambiguous and, under established California case authority, it must be construed against National Union and in favor of coverage for the policy holder.

66. Despite the confusing nature of the definition of the term "**Claim**", one thing is clear -- *i.e.*, a "**Claim**" is not limited to a civil, criminal, administrative or regulatory proceeding commenced by the filing of a complaint, charges, information or return of an indictment as set out in sub-parts (ii) and (iii).

67. Instead, a "**Claim**" is more broadly construed by the Subject Policies as evidenced by the very first sub-part of the "Claims" definition where subsection (i) provides a broad, catch-all definition that informs PAMC that National Union considers a "Claim" to include *any* "written **demand for** monetary ***or*** **non-monetary relief**" (emphasis added) and then the Policy further provides an example of the type of non-monetary relief that falls within this broad, catch-all provision to include a "request" for the insured to cooperate with a third party in some way – viz., "**including any request** to toll or waive any statute of limitations." (Emphasis added.)

68. Thus, National Union expressly acknowledged and adopted a broad interpretation in the Subject Policies of what constitutes a "**Claim**" and specified that it not only included actions for "non-monetary relief" but also "requests" for non-monetary relief. This broad interpretation of the Subject Policies' definition of "**Claim**" is consistent with established case law that is directly contrary to National Union's current outright denial of coverage.

69. On the other hand, National Union's coverage position regarding whether the DOJ Subpoena and *Qui Tam* Action constitute a "**Claim**" is contrary to the express wording of the policy itself and numerous case authority across the country.

70. Based on established case authority, coupled with the broad interpretation of what constitutes a "demand", "non-monetary relief" or a "request" under the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Subject Policies, common parlance and applicable law, it is clear that the DOJ Subpoena issued in "connection with an official criminal investigation being conducted by federal authorities" constitutes a demand and/or request for non-monetary relief constituting a "**Claim**" under the Subject Policies.

71. This conclusion is especially true given that the DOJ Subpoena "require[d] that a custodian of records from [PAMC] appear at the United States Attorney's Office and produce the records described in the subpoena…."

72. The DOJ Subpoena also warned PAMC that "failure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States … to punish default or disobedience."

73. As a result, National Union's claim that the DOJ Subpoena "does not demand monetary or non-monetary relief" is wholly without merit.

74. As National Union concedes, the DOJ Subpoena and the *Qui Tam* Action are inextricably intertwined. As a result, PAMC reasonably concluded that, based upon the DOJ's admonitions against premature disclosure and possible criminal consequences attendant to violating the instruction to keep information or actions relating to the investigation and DOJ Subpoena confidential, PAMC was precluded from disclosing the *Qui Tam* Action to anyone, including National Union unless and "until the [DOJ] notifie[d] [PAMC] that the investigation has been completed or until a court orders disclosure".

75. That DOJ notification did not occur until, at the earliest, January 5, 2017, when PAMC received a letter from the DOJ indicating that "based on the information currently known to it … this Office does not presently intend to pursue criminal charges against PAMC or its employees for conduct that was the subject of that investigation."

76. On April 20, 2015, PAMC provided National Union with notice of the DOJ Subpoena and the *Qui Tam* Action during the extended reporting period of the 2016-17 Policy.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

77.     To determine otherwise constitutes an unfair and overly restrictive interpretation of the Subject Policies' reporting requirements. In the present circumstance, PAMC was presented with a Hobson's choice of either (a) ignoring the DOJ warnings and admonitions and disclose to National Union information about the DOJ's investigation and the related *Qui Tam* Action while putting PAMC at risk for potential criminal consequences attendant such disclosure, or (b) wait until the DOJ notified PAMC that it had completed its criminal investigation so that PAMC could notify National Union of both the DOJ Subpoena and related *Qui Tam* Action without risking criminal sanctions related to a premature disclosure of information that might (wittingly or unwittingly) jeopardize the DOJ's investigation (while risking a claim by National Union of an untimely tender).

78.     PAMC justifiably chose the latter course of action as there is nothing in the Subject Policies requiring PAMC to risk criminal prosecution in order to comply with whatever notice obligations might exist in the Subject Policies.  Any interpretation of the notice provisions in the Subject Policies as requiring a policyholder to risk criminal prosecution in order to comply would be wholly unwarranted, unjustified, and beyond the parties' bargained-for expectations.

79.     In fact, reading the notice requirements as National Union advances results in an absurdity as it would require PAMC to risk criminal prosecution in order to avail itself of coverage under the policy.  By taking such a position, National Union has chosen to ignore common canons of construction, the bargained for expectations and fairness to seize upon the timing of the notice as one of the primary basis for denying coverage.  This position is expressly rejected by California law.

80.     The reference to the "Discovery Period" in the notice provision of the Subject Policies quoted above, supports coverage here.

81.     The Subject Policies state that, if PAMC cancels the policy or if either PAMC or National Union refuses to renew the policy, PAMC could pay an additional premium to secure "a period of up to six (6) years or of unlimited duration following

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the effective date of such cancellation or nonrenewal (herein referred to as the 'Discovery Period'), in which to give the Insurer written notice of Claims first made against: any Insured during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by the canceled or nonrenewed policy or Coverage Section, as applicable."

82. Here, PAMC renewed the 2015-16 Policy and had uninterrupted "PrivateEdge Plus" policy coverage for a number of years before and after the 2015-16 Policy period.

## THE TENDER OF THE LOSS TO NATIONAL UNION AND RELEVANT RESPONSES

83. On April 20, 2017, within the extended reporting period of the 2016-17 Policy, PAMC provided notice of the DOJ Subpoena and the *Qui Tam* Action (in all of its various iterations) to the Jules Berlin agency, and thus to National Union.

84. On April 27, 2017, AIG on behalf of National Union, acknowledged receipt of the claim.

85. On May 16, 2017, National Union denied outright all coverage for the DOJ Subpoena and the *Qui Tam* Action.

86. On August 30, 2017, counsel for PAMC sent a 10-page letter to National Union contesting its outright denial of coverage. The letter provided citations to a dozen cases supporting PAMC's claim that coverage existed under the Subject Policies.

87. By letter dated September 20, 2017, counsel for National Union reiterated the carrier's previous denial without offering any new reasons or explanations for its position.

////

////

////

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

////

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

88. PAMC re-alleges and incorporates by reference, each and every allegation set forth in paragraphs 1 through 87 inclusive above, of the Common Allegations set forth above, as though they are set forth in full.

89. PAMC has fully complied with and have performed all of the conditions and covenants on their part to be performed under the Subject Policies.

90. National Union breached the Subject Policies in a number of ways including, without limitation, the following:

a. Failing and refusing to acknowledge that the DOJ Subpoena constitutes a Claim as that term is defined in the several National Union Policies;

b. Failing and refusing to acknowledge that the DOJ Subpoena was timely reported to National Union under the Subject Policies;

c. Failing and refusing to acknowledge that the fees or costs PAMC incurred by responding to the DOJ Subpoena are eligible for reimbursement under the Subject Policies;

d. Failing and refusing to acknowledge that the Qui Tam Action was timely reported to National Union under the Subject Policies;

e. Failing and refusing to acknowledge that the fees and costs PAMC incurred by responding to or defending against the Qui Tam Action are eligible for reimbursement under the under the Subject Policies;

f. Failing to view the facts and circumstances, along with the evidence and case authority PAMC submitted, in the light most favorable to providing coverage for the loss, as National Union was required to do by contract and law;

g. Viewing, in bad faith, the evidence and case authority provided through the lens of creating an artifice for denying coverage rather than supporting coverage;

h. Placing its own financial interests ahead of the financial interests of PAMC; and

i. Breaching the implied covenant of good faith and fair dealing as more fully detailed herein.

91. PAMC has been damaged, in an amount to be established at trial, as a direct and proximate result of the above listed contract breaches (and others) committed by National Union.

## SECOND CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith And Fair Dealing)**

92. PAMC re-alleges and incorporates by reference, each and every allegation set forth in paragraphs 1 through 87 inclusive above, of the Common Allegations, paragraphs 89 through 90, inclusive, of the First Claim for Relief, as though they are set forth in full.

93. Implied in the Subject Policies is a covenant that National Union would act in good faith and deal fairly with PAMC. That obligation includes, among other things, an obligation that National Union would not do anything to interfere with PAMC's rights to receive the protection and benefits due and owing under the Subject Policies and that National Union would give as much, if not more, consideration to PAMC' interest as National Union gave to its own interests in responding to this loss.

94. Instead of complying with these duties and obligations, National Union has acted in bad faith, , by doing or failing to do the matters set forth in Paragraph 90, and furthered that bad faith conduct by doing (or not doing), each and all of the following:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

a. Placing its own financial interests ahead of the financial interests of PAMC;

b. Refusing and failing to promptly investigate and resolve PAMC's claim;

c. Engaging in a systematic and orchestrated effort to stall, delay and stonewall payment of the PAMC's claim;

d. Failing to promptly and properly investigate PAMC's claim with an eye towards honoring its contractual obligations while stringing PAMC;

e. Failing to timely and properly initiate, conduct, and conclude its investigations regarding its coverage obligations to PAMC;

f. Failing to state proper and adequate bases for denying coverage and, instead, asserting potential grounds for denying or limiting coverage based on assertions contrary to the facts, the law, insurance industry custom and practice, and the reasonable expectations of PAMC as policyholders; and

g. Otherwise acting contrary to the obligations imposed by the implied covenant of good faith and fair dealing in the Subject Policies.

95. In breach of the implied covenant of good faith and fair dealing, National Union did the things and committed the acts alleged above for the purpose of consciously withholding from PAMC the rights and benefits to which PAMC is entitled under the Subject Policies.

96. The acts described above by National Union are (a) inconsistent with the reasonable expectations of PAMC; (b) contrary to established claims practices and legal requirements; (c) contrary to insurance industry custom and practice; (d) contrary to the express terms of the Subject Policies; and (e) constitute bad faith.

97. As a direct and proximate result of the unreasonable and bad faith conduct of National Union, PAMC has suffered, and will continue to suffer, damages under the Subject Policies, plus interest, and other economic and consequential damages, in a total amount to be shown at the time of trial.

98. The conduct by National Union is despicable and outrageous, and was done with a conscious disregard of the rights and reasonable expectations of PAMC, constituting oppression, fraud, and/or malice. National Union engaged in the acts cited herein for the sole purpose of improperly denying benefits due under the Subject Policies.

99. Specifically, by acting as alleged above, in light of the information, facts, and relevant law to the contrary, National Union consciously disregarded the rights of PAMC.

100. By doing these things, National Union wrongfully deprived PAMC of the benefit of the policy and inflicted substantial damage on PAMC. National Union ignored the interests and concerns of PAMC, with the requisite intent to injure within the meaning of the California Civil Code Section 3294. Therefore, PAMC is entitled to recover punitive damages from National Union in an amount that is sufficient to punish and make an example of National Union and in order to deter similar conduct by National Union in the future.

101. Additionally, pursuant to the holding in *Brandt v. Superior Court* (1985) 37 Cal.3d 813, PAMC is entitled to recover all of the costs, expenses, and attorneys' fees reasonably incurred by PAMC to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by National Union. When the precise amounts of these costs, expenses and fees are known, PAMC will seek leave of Court to amend this complaint.

## THIRD CLAIM FOR RELIEF

## (Declaratory Relief against National Union)

102. PAMC re-alleges and incorporates by reference, each and every allegation set forth in paragraphs 1 through 87, inclusive, of the Common Allegations, paragraphs 89 through 90, inclusive, of the First Claim for Relief, as though they are set forth in full.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

103. An actual controversy has arisen and now exists between PAMC on the one hand and National Union on the other with respect to whether PAMC is entitled to recover under the Subject Policies.

104. As to this controversy, PAMC requests that the Court make and enter a binding judicial declaration that:

a. The DOJ Subpoena constitutes a Claim as that term is defined in the several National Union Policies;

b. The DOJ Subpoena was timely reported to National Union under the Subject Policies;

c. The fees or costs PAMC incurred by responding to the DOJ Subpoena are eligible for reimbursement under the Subject Policies;

d. The *Qui Tam* Action was timely reported to National Union under the Subject Policies;

e. The fees and costs PAMC incurred by responding to or defending against the *Qui Tam* Action are eligible for reimbursement under the under the Subject Policies;

f. National Union failed to view the facts and circumstances, along with the evidence and case authority PAMC submitted, in the light most favorable to providing coverage for the loss, as National Union was required to do;

g. No exclusions apply to bar coverage; and

h. PAMC has fully complied with all requirements under the Subject Policies.

105. The requested declarations are both necessary and proper at this time under the circumstances in that the interests of judicial economy and substantial justice will be served thereby.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

106. PAMC is informed and believes, and upon that basis alleges, that National Union disputes all or part of the contentions set forth in the preceding paragraphs.

107. PAMC seeks a judicial declaration as set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, PAMC prays for judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1. For damages, plus interest, according to proof at the time of trial;

### ON THE SECOND CLAIM FOR RELIEF

2. For damages, plus interest, according to proof at the time of trial;

3. For the amount of reasonable attorneys' fees and expenses incurred by PAMC to obtain the benefits due to him under the Subject Policies, plus interest, according to proof at the time of trial;

4. For punitive damages in an amount to be determined at trial;

### ON THE THIRD CLAIM FOR RELIEF

5. For the declarations set forth in that claim;

### ON ALL CLAIMS FOR RELIEF

6. That judgment be entered in favor of PAMC and against Defendants and each of them;

7. For costs of suit incurred herein; and

////

////

////

8. For such other, further, and/or different relief as may be just and proper.

DATED: July 10, 2018

REED SMITH LLP;

By: /s/Richard Giller
Richard C. Giller

Attorneys for Plaintiff
**PAMC, Ltd., dba Pacific Alliance Medical Center**

HAMBURG, KARIC, EDWARDS & MARTIN LLP

By: /s/Gregg A. Martin
Gregg A. Martin

Attorneys for Plaintiff
**PAMC, Ltd., dba Pacific Alliance Medical Center**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 25 –

COMPLAINT