UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

### JS-6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| N/A | N/A |

**Proceedings:**   ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [22]

On July 10, 2018, Plaintiff PAMC, Ltd. filed the Complaint in this action against Defendant National Union Fire Insurance Company of Pittsburgh, PA. Dkt. 1 ("Compl."). On September 10, 2018, Defendant moved to dismiss the Complaint. *See* Dkt. 11. For the reasons stated below, Defendant's motion to dismiss is GRANTED, and the Complaint is DISMISSED with prejudice.

**I.   Factual Allegations**

   **A.   The Insurance Policies**

On February 28, 2015, Defendant issued an insurance policy to Plaintiff identified as Policy No. 38253400, covering the period of February 28, 2015 to February 28, 2016 (the "2015-2016 Policy"). Compl. ¶ 17; *see also* Dkt. 1-1. The 2015-2016 Policy was a renewal of an insurance policy issued by Defendant that covered the previous year, identified as Policy No. 24203441 (the "2014-2015 Policy"). Compl. ¶ 18. The expiration date of the 2015-2016 Policy was extended by endorsement to March 29, 2016. *Id.* ¶ 17. On March 29, 2016, the 2015-2016 Policy was renewed for the following year, with a new insurance policy issued covering the period from March 29, 2016 to March 29, 2017 (the "2016-2017 Policy"). *Id.* ¶ 29. The 2016-2017 Policy was again renewed on March 29, 2017, replaced by a new policy identified as Policy No. 01-310-86-23 covering the period from March 29, 2017 to March 29, 2018 (the "2017-2018 Policy"). *Id.* ¶ 39. The Court will refer to all of the above policies together as the "Policy," as the parties indicate that the substantive terms of the Policy did not change during each successive year-long renewal of the Policy.

|   | : |   |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

Under the Policy, Defendant agreed to provide insurance coverage for liabilities incurred by Plaintiff and Plaintiff's directors and officers. Relevant to the Whistleblower Action and the Subpoena, the Policy states in a "D&O Coverage Section" that Defendant "shall pay the Loss of an Individual Insured of the Company arising from a: (i) Claim made against the Company, or (ii) Claim made against an Individual Insured, for any Wrongful Act." Dkt. 1-1 at 18. The term "Wrongful Act" is defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or act" by Plaintiff or by a covered executive or employee of Plaintiff. *Id.* at 22. The term "Loss" is defined as "damages, judgments, settlements, pre-judgment and post-judgment interest, Crisis Management Loss and Defense Costs," including "punitive, exemplary and multiple damages," but also excluding "civil criminal fines or penalties imposed by law." *Id.* at 21.

The Policy includes several provisions addressing Plaintiff's obligations to report claims falling within the coverage provided by the Policy. The D&O Coverage Section states that coverage is to be provided "solely with respect to Claims first made during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy." *Id.* at 18. The term "Policy Period" is defined to mean the applicable policy period of the specific year-long policy in effect at the time. *See id.* at 9. The term "Discovery Period" was defined in the Policy as optional coverage the insured party can purchase, which would provide a period of time following the cancellation or nonrenewal of the Policy during which the insured party can report any newly discovered claims that first occurred during the Policy Period. *Id.* at 13. The term "Claim" as used in the D&O Coverage Section is defined to include, among others, "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by . . . service of a complaint or similar pleading," and "a civil, criminal, administrative or regulatory investigation of an Individual Insured . . . after . . . the service of a subpoena upon such Individual Insured." *Id.* at 19.

Elsewhere in the Policy's "Terms and Conditions" section, the Policy states that, "as a condition precedent to the obligations of the Insurer under this policy," Plaintiff must "give written notice to the Insurer of any Claim made against an Insured." *Id.* at 11. Plaintiff must provide notice of a claim to Defendant "as soon as practicable" after Plaintiff's risk manager or general counsel "first becomes aware of the Claim." *Id.* The Policy continues that "in all events a Claim must be reported no later than either: (i) anytime during the Policy Period or during the Discovery Period (if applicable); or (ii) within ninety (90) days after the end of the Policy Period or the Discovery Period (if applicable)." *Id.* Additionally, the "Declarations" on the first page of the Policy states the following disclaimer: "COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES." *Id.* at 1.

### B.  The Whistleblower Action

On June 14, 2013, a *qui tam* action was filed under seal in the United States District Court for the Central District of California against various defendants, including Plaintiff, alleging violations of the Federal and California False Claims Acts. Compl. ¶ 12; *see United States and State of California ex rel. John Doe v. PAMC Ltd. et al.*, No. 2:13-cv-04273-RGK-MRW (C.D. Cal.) (the "Whistleblower Action"). The relator in the Whistleblower Action sought recovery of treble damages and civil penalties for the defendants' conduct that allegedly caused false claims to be submitted to the Medicare and Medicaid programs. Compl. ¶ 14.

On June 28, 2015, a first amended complaint in the Whistleblower Action was filed under seal, seeking the same damages as before. *Id.* ¶¶ 24-25. On December 15, 2015, the court unsealed the first amended complaint in the Whistleblower Action. *Id.* ¶ 27. Plaintiff alleges that it was unaware of the existence of the Whistleblower Action until March 14, 2016, when Plaintiff filed a waiver of service of the first amended complaint with the court. *Id.*; *see also id.* ¶¶ 13, 24.

On July 13, 2016, a second amended complaint was filed in the Whistleblower Action, with no changes to the damages requested in the prior complaints. *Id.* ¶¶ 31-32. Plaintiff filed an answer to the second amended complaint on July 28, 2016. *Id.* ¶ 31. On September 26, 2016, a third amended complaint was filed, again maintaining the same requests for damages. *Id.* ¶¶ 34-35.

On February 11, 2017, Plaintiff and the relator in the Whistleblower Action participated in mediation and reached a settlement. *Id.* ¶ 38. The parties filed a notice of settlement on February 15, 2017. *Id.* The settlement agreement was fully executed on June 27, 2017, and a joint stipulation was filed on July 7, 2017 to dismiss the case. *Id.* ¶¶ 43, 45.

### C.  The Department of Justice Subpoena

On June 9, 2015, the Department of Justice (the "DOJ") sent a cover letter to Plaintiff with an enclosed subpoena requesting a production of documents from Plaintiff's custodian of records, with the

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

subject line "Federal Health Care Offense Subpoena" (the "Subpoena"). *Id.* ¶¶ 1, 19; *see also* Dkt. 11-1 Ex. 1.[1] The cover letter to the Subpoena stated:

> Because this subpoena relates to an ongoing criminal investigation, this Office requests that you not disclose the existence of or compliance with the subpoena for an indefinite period of time or until the Office notifies you that the investigation has been completed or until a court orders disclosure. Premature disclosure could impede the investigation and interfere with the enforcement of the law. We request that you give this Office advance notice if you plan to disclose the existence of or compliance with the subpoena.

Dkt. 11-1 Ex. 1, at 18. Plaintiff alleges that the "clear import" of this paragraph was to warn Plaintiff that premature disclosure of the Subpoena could expose Plaintiff and its employees to criminal charges for obstruction of justice. Compl. ¶ 22. Plaintiff also characterized the DOJ's warning as precluding Plaintiff from disclosing the existence of the Whistleblower Action. *Id.* ¶ 28.

On January 5, 2017, Plaintiff received a letter from the DOJ stating that the criminal investigation was complete and that the DOJ did not intend to pursue criminal charges against Plaintiff or its employees. *Id.* ¶ 37. Plaintiff alleges that this was the first date Plaintiff was free to disclose the Subpoena to any other party without violating the DOJ's confidentiality instructions. *Id.* ¶¶ 23, 37.

### D.     The Coverage Dispute

The Complaint alleges that on April 20, 2017, Plaintiff provided written notice to Defendant's designated agency of the Subpoena and the Whistleblower Action, seeking coverage for each of those proceedings as separate "Claims" under the Policy. Compl. ¶ 40. On May 16, 2017, Defendant declined coverage under the Policy. *Id.* ¶ 42. Defendant allegedly asserted that the Subpoena and the Whistleblower Action were not timely reported to Defendant under the 2015-2016 Policy, which

---

[1]     In Defendant's motion to dismiss, Defendant requests the Court to take judicial notice of various exhibits attached to Defendant's motion. The Court GRANTS Defendant's request for judicial notice for all documents referenced in this Order, as the documents were incorporated by reference in Plaintiff's complaint and Plaintiff has not questioned the authenticity of those documents. *See* Fed. R. Evid. 201; *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012). For all documents attached to Defendant's motion not referenced in this Order, the Court finds those documents to be irrelevant or unnecessary to the motion to be decided, and therefore the Court DENIES as moot Defendant's request to take judicial notice of those documents.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

Defendant alleged was the applicable policy period given that Plaintiff was served with the Subpoena on June 9, 2015 and allegedly first became aware of the Whistleblower Action on March 14, 2016. *Id.* ¶ 42(b), (d). Defendant allegedly denied Plaintiff's representation that the Subpoena and the Whistleblower Action were "first made" against Plaintiff during the 2017-2018 Policy Period due to the DOJ's request that Plaintiff keep the Subpoena and accompanying investigation secret. *Id.* ¶ 42(f). Defendant also allegedly asserted that the Subpoena is not a covered "Claim" under the 2015-2016 Policy. *Id.* ¶ 42(a).

On August 30, 2017, Plaintiff wrote a letter to Defendant challenging Defendant's denial of coverage for the Subpoena and the Whistleblower Action. *Id.* ¶ 47. In the letter, Plaintiff contended that notice of the two claims was timely after the DOJ advised Plaintiff that the criminal investigation was complete on January 5, 2017. *Id.* ¶ 49. In a letter dated September 20, 2017, Defendant rejected Plaintiff's arguments for why notice of the claims was timely and reiterated Defendant's denial of coverage for those claims. *Id.* ¶ 50.

Plaintiff initiated this action on July 10, 2018, asserting in the Complaint causes of action against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, and a request for declaratory relief, each of which based on Defendant's denial of coverage for the Subpoena and the Whistleblower Action. *See id.* ¶¶ 88-107.

**II.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal

|  |  | : |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA | | |

conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**III.   Analysis**

California law applies to the parties' dispute in this diversity case, including California's applicable rules regarding choice-of-law. *See, e.g.*, *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The Policy does not appear to contain a choice-of-law provision. In the absence of a choice-of-law provision in a contract, California requires the contract "to be interpreted according to the law and usage of the place where it is to be performed" or, if the contract does not specify the place of performance, "according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Here, the Policy was issued to Plaintiff, a California company based in Los Angeles. Compl. ¶¶ 1, 4. The Whistleblower Action was brought in federal court in California. *Id.* ¶ 12. The Subpoena was issued to Plaintiff in California and required Plaintiff to appear at the DOJ's office in Los Angeles. *See* Dkt. 11-1 Ex. 1. The Policy itself mentions California on the first page setting forth the "Declarations" of the Policy. *See* Dkt. 1-1 at 1. The Policy is plainly governed by California law, and the parties do not contest otherwise.

    **A.   Breach of Contract**

Under California law, when resolving a question of insurance coverage, a court must first look to the language of the insurance policy itself as it would for any other contract. *See Slater v. Lawyers' Mut. Ins. Co.*, 227 Cal. App. 3d 1415, 1419 (1991). "The rules governing policy interpretation require [a court] to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). Ambiguities in an insurance contract are to be construed against the insurer "if that construction conforms to the reasonable expectations of the insured." *Bartlome v. State Farm Fire & Cas. Co.*, 208 Cal. App. 3d 1235, 1239 (1989) (citing *Reserve Ins. Co. v. Pisciotta*, 20 Cal. 3d 800, 808 (1982)). However, "words used in an insurance policy are to be interpreted according to their plain meaning, and the courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Id.* (citing *Reserve Ins.*, 20 Cal. 3d at 807). A court's interpretation of an insurance policy, including whether the policy language is ambiguous, is a question of law. *Waller*, 11 Cal. 4th at 18; *Pac. Emp'rs Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348, 1354 (1990).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA | | |

Per the explicit language in the Policy, the Policy provides coverage for all covered claims arising during the applicable Policy Period. *See* Dkt. 1-1 at 11. Coverage under the D&O Coverage Section is to be provided "solely with respect to Claims *first* made *during the Policy Period*." *Id.* at 18 (emphasis added). The unambiguous language in this provision means that a claim against Plaintiff is only covered by a given year-long policy period if that claim is "first" made against Plaintiff during that policy period. The Policy clarifies that a claim is "first made" when Plaintiff's risk manager or general counsel "first becomes aware of the Claim." *Id.* at 11. Thus, the plain language of the Policy states that a claim is considered to be "made" in the Policy Period in which Plaintiff first becomes aware of the claim. *See, e.g.*, *Safeco Surplus Lines Co. v. Emp'r's Reinsurance Corp.*, 11 Cal. App. 4th 1403, 1408-09 (1992) (construing similar language in a "claims-made-and-reported" policy as designating the date a claim first made as the date the insured received notice of the claim against it).

Furthermore, the Policy provides coverage for claims made against Plaintiff only if those claims are reported to Defendant in that same Policy Period, or within 90 days after the end of the Policy Period. The Policy states that a covered claim must be "reported to the Insurer pursuant to the terms of this policy." Dkt. 1-1 at 18. The reporting requirements in the Policy obligate Plaintiff, "in all events," to report a covered claim "anytime during the Policy Period" or "within ninety (90) days after the end of the Policy Period." *Id.* at 11. The Policy labels the reporting requirement, in unequivocal terms, a "condition precedent to the obligations of the Insurer under this policy." *Id.* at 11. "[A] condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993) (citing Cal. Civ. Code § 1436). The existence of a condition precedent in a contract "depends upon the intent of the parties as determined from the words they have employed in the contract." *Realmuto v. Gagnard*, 110 Cal. App. 4th 193, 199 (2003) (citing 13 Williston on Contracts (4th ed. 2000) § 38:16). Thus, a condition precedent can be found where the parties agreed to "plain and unambiguous contract language to that effect." *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 550 (1996) (citation omitted). By designating Plaintiff's reporting requirement under the Policy as a "condition precedent" to Defendant's obligations to provide insurance coverage to Plaintiff, the parties clearly intended for Plaintiff to satisfy the Policy's explicit reporting requirements for Plaintiff to be entitled to coverage for any covered claim made against Plaintiff during the Policy Period.

Based on the above, the insurance coverage provided by the Policy constitutes what is commonly known as a "claims-made-and-reported" policy. Claims-made-and-reported policies are distinguished from claims-made policies, which provide coverage for all claims arising in the policy period but do not require the insured to report the claim during the policy period. *Pension Trust Fund for Operating*

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

*Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955-56 (9th Cir. 2002) (citations omitted). Courts have construed claims-made-and-reported insurance policies to be unambiguous in their reporting and notice requirements, and accordingly courts routinely enforce these policies according to their explicit terms. *See, e.g.*, *Slater*, 227 Cal. App. 3d at 1421 (enforcing the coverage requirements of a claims-made-and-reported policy because "the reporting and notice provisions are not ambiguous and do not render the coverage language ambiguous"); *Pac. Emp'rs*, 221 Cal. App. 3d at 1355 (analyzing a claims-made-and-reported policy which "clearly and unambiguously limits coverage to claims both made and reported during the policy period"); *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991) (an insurance contract undisputedly made the insurer "only responsible for claims made during the term of the policy or resulting from events or circumstances that could lead to a claim, concerning which the insurer is notified within the term of the policy plus sixty days"); *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 885 (1992) (under a claims-made-and-reported policy, "there can be no compensable first year claims absent notice thereof by the insureds or the company in that year"). Consistent with the plethora of cases enforcing claims-made-and-reported insurance policies according to their terms, the Policy unambiguously required Plaintiff to report any claims of which Plaintiff first became aware within the applicable Policy Period plus ninety days.

Plaintiff argues that the representations on the Declarations page of the Policy, which states that coverage under the Policy is "generally" limited to claims first made against Plaintiff and reported to Defendant during the Policy Period, allow for the possibility that Defendant could be required to provide coverage even if Plaintiff did not satisfy the Policy's explicit reporting requirements. *See* Dkt. 1-1 at 1. But the use of the word "generally" in the Declarations page "does not negate the reporting requirements otherwise plainly and conspicuously included in the [P]olicy." *Fashion Life, Inc. v. Zurich Am. Ins. Co.*, No. CV 09-5305 DSF (CWx), 2010 WL 11519367, at *2 (C.D. Cal. Jan. 29, 2010). Indeed, as the court in *Fashion Life* noted, "there is no reason to restrict the operation of the reporting requirements of the policy where the declarations, while not as detailed as they could be, do not actually contradict the later reporting provisions." *Id.* The statement in the Declarations page of the Policy that coverage "generally" requires satisfaction of the claims-made-and-reported limitations within the Policy is not inconsistent with the actual reporting requirements contained in the Policy. Therefore, Plaintiff cannot be excused from its reporting obligations based solely on the language in the Declarations page of the Policy alone. *See also PIMG, Inc. v. Carolina Cas. Ins. Co.*, No. 09-CV-2022 BEN (CAB), 2010 WL 11594809, at *3-4 (S.D. Cal. Mar. 5, 2010) (rejecting the argument that the notice-prejudice rule should apply where a declaration page of a claims-made-and-reported policy stated only that coverage was provided on a claims-made basis without referencing the reporting requirements contained elsewhere in the policy).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

Now that the Court has interpreted the unambiguous terms of the Policy, the Court must apply the terms of the Policy to Plaintiff's reporting of the Subpoena and the Whistleblower Action to determine if Plaintiff satisfied the Policy's reporting obligations.

        1.        *Plaintiff's Notice of the Subpoena and the Whistleblower Action Was Untimely*

Even assuming all of the factual allegations in the Complaint as true, Plaintiff did not satisfy the reporting requirements in the Policy regarding the Subpoena and the Whistleblower Action as a matter of law. Plaintiff reported both of these claims to Defendant on April 20, 2017, and Plaintiff alleges this notice was timely because Plaintiff claims that these claims were first made during the Policy Period for the 2016-2017 Policy. Plaintiff's own allegations in the Complaint refute this conclusion.

The 2015-2016 Policy was in effect during the Policy Period of February 28, 2015 to March 29, 2016. Compl. ¶ 17. Plaintiff admits in the Complaint that the Whistleblower Action was unsealed and made available to the public on December 15, 2015. *Id.* ¶ 27. Plaintiff alleges that it was unaware of the existence of the Whistleblower Action until Plaintiff filed a waiver of service of the first amended complaint in that action on March 14, 2016. *Id.* ¶¶ 13, 24, 27. Assuming that Plaintiff's allegation is true for purposes of Defendant's motion to dismiss, in light of Plaintiff's filing of a waiver of service in the Whistleblower Action, March 14, 2016 was the operative date that Plaintiff first became aware of the Whistleblower Action. However, that date still falls within the 2015-2016 Policy Period due to the extension by endorsement of the 2015-2016 Policy Period until March 29, 2016, which Plaintiff admits in the Complaint. *See id.* ¶ 17. As to the Subpoena, a separate "Claim" for which Plaintiff seeks coverage, Plaintiff admits that it received the Subpoena by letter from the DOJ on June 9, 2015, making the date that Plaintiff first became aware of the Subpoena falling within the 2015-2016 Policy Period. *Id.* ¶¶ 1, 19; *see also* Dkt. 11-1 Ex. 1.[2] Therefore, both the Whistleblower Action and the Subpoena were first "made" during the Policy Period for the 2015-2016 Policy.

Plaintiff's notice to Defendant of these claims on April 20, 2017 was beyond the 90-day grace period for reporting claims as provided by the Policy. *See* Dkt. 1-1 at 11. Therefore, Plaintiff failed to provide timely notice of the Whistleblower Action and the Subpoena according to the requirements of the Policy, and Defendant rightfully denied coverage to Plaintiff on those claims. The Court's conclusion is based on the unambiguous language in the Policy, and the Court need not construe any

---

[2] The Subpoena did not reference the Whistleblower Action, and therefore the Subpoena does not affect the date of Plaintiff's actual knowledge of the existence of the Whistleblower Action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

ambiguous terms in the Policy in a light favorable to Plaintiff in conformity with Plaintiff's reasonable expectations as an insured. Indeed, Plaintiff's reasonable expectations as an insured include the expectation that coverage would be denied if Plaintiff did not satisfy the explicit reporting requirements set forth in the Policy as a clear condition precedent to coverage.

Plaintiff argues that the policy periods under each installment of the Policy should be treated as one contiguous policy period due to the successive renewals of the Policy. Plaintiff is incorrect as a matter of law. Courts applying California law "have consistently recognized that, absent an agreement to the contrary, the renewal of a policy does not extend a policy's reporting period." *PIMG*, 2010 WL 11594809, at *2 (citing *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1096 (N.D. Cal. 2009)); *see also Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387 (2008) (because the insured became aware of a claim "during the first policy period but failed to notify [the insurer] of the claim within 30 days after the expiration of the policy, as required," the insured's "subsequent notice of the lawsuit during the second policy period . . . was untimely"). The 2016-2017 Policy applied to a separate Policy Period than the 2015-2016 Policy and therefore embodied separate reporting requirements. Nothing in the 2016-2017 Policy intended to amend or extend the reporting period under the 2015-2016 Policy. Therefore, the fact that Plaintiff renewed the 2015-2016 Policy through the issuance of the 2016-2017 Policy has no relevance to Plaintiff's reporting requirements under the 2015-2016 Policy, which Plaintiff undisputedly failed to satisfy as the Court analyzed above.

Plaintiff also argues that notice was timely because the claims were not first "made" until January 5, 2017, the date that the DOJ sent a letter to Plaintiff stating that the criminal investigation pursuant to the Subpoena was concluded and that the DOJ did not intend to pursue criminal charges against Plaintiff or its employees. *See* Compl. ¶ 37. Plaintiff asserts that it was not legally able to provide notice of the Subpoena or the Whistleblower Action because of language in the DOJ's cover letter to the Subpoena warning Plaintiff of the consequences of unauthorized disclosure of the Subpoena or the Whistleblower Action (which was still under seal when the DOJ sent the cover letter). But the DOJ's cover letter did not affirmatively *prohibit* Plaintiff from disclosing these actions to Defendant; the DOJ merely "request[ed]" that Plaintiff not disclose the existence of the Subpoena to anyone else. Dkt. 11-1 Ex. 1, at 18. In fact, the DOJ expressly authorized Plaintiff to seek permission to disclose the existence of the Subpoena and/or the Whistleblower Action: "We request that you give this Office advance notice if you plan to disclose the existence of or compliance with the subpoena." *Id.* Plaintiff could have sought the DOJ's permission to provide notice to Defendant of the Subpoena and the Whistleblower Action so that Plaintiff could seek insurance coverage for those actions, but Plaintiff did

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

not do so. In any event, the Whistleblower Action was made public on December 15, 2015, and Plaintiff has not articulated a reason why the DOJ's cover letter would have precluded Plaintiff from notifying Defendant of the existence of the Whistleblower Action after it became unsealed and publicly available.

Plaintiff has not provided any legal support for the conclusion that the Subpoena and the Whistleblower Action cannot be deemed "made" until receipt of the DOJ's letter closing the investigation, due the advisory warning against disclosure in the DOJ's cover letter accompanying the Subpoena. Plaintiff's position that there are "disputed facts" about the above timeline of when the claims were first "made" is incorrect. The determination of when a claim is first "made" under the Policy is one of law based on the interpretation of the unambiguous terms of the insurance policy. *Waller*, 11 Cal. 4th at 18. All of Plaintiff's assertions in the Complaint that the claims were first made during the Policy Period for the 2016-2017 Policy are legal conclusions which the Court need not consider. *See Iqbal*, 556 U.S. at 678. Even when accepting Plaintiff's *factual* allegations as true, the Court concludes as a matter of law that Plaintiff failed to provide timely notice of the Subpoena and the Whistleblower Action as required by the terms of the 2015-2016 Policy.

      2.      *Plaintiff's Untimely Notice Is Not Excusable*

Plaintiff argues that, even if Plaintiff's notice to Defendant of the Subpoena and the Whistleblower Action were untimely under the explicit terms of the 2015-2016 Policy, Plaintiff should nonetheless be excused from its deficient notice under the "notice-prejudice" rule.

In California, the notice-prejudice rule "bar[s] insurance companies from disavowing coverage on the basis of lack of timely notice unless the insurance company can show actual prejudice from the delay." *Pac. Emp'rs*, 221 Cal. App. 3d at 1357. This rule was developed in the context of "occurrence" policies, in which an insurer provides coverage for any acts or omissions arising during the policy period even if the claim is first made after the expiration of the policy. *See id.* at 1356 (quoting *Chamberlin v. Smith*, 72 Cal. App. 3d 835, 845 n. 5 (1977)). California courts have consistently declined to extend the notice-prejudice rule to claims-made policies, on the ground that the insurer has a right to limit the scope of the coverage it provides as set forth in the plain language of the insurance policy. *See id.* at 1357-59 (quoting *Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976)); *see also Slater*, 227 Cal. App. 3d at 1421-23 (following *Pacific Employers* and finding the notice-prejudice rule inapplicable to a claims-made policy); *Helfand*, 10 Cal. App. 4th at 888 (rejecting the application of the notice-prejudice rule where the insurance policy "makes notice an element of coverage" because "[s]ubjecting this policy to the notice-prejudice rule would materially alter the insurer's risk"); *PIMG*, 2010 WL 11594809

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

("Courts have consistently held . . . that the Notice-Prejudice Rule does not apply to 'claims made and reported policies.'") (citations omitted). Here, consistent with California law, the Court finds the notice-prejudice rule inapplicable to the Policy, because the Policy makes timely notice of a claim made during the Policy Period an explicit "condition precedent" to Defendant's obligations to provide coverage to Plaintiff for any claims otherwise covered.

Plaintiff relies on *Root v. American Equity Specialty Insurance Co.*, 130 Cal. App. 4th 926 (2005), in support of its argument that Plaintiff's untimely notice should be equitably excused. In *Root*, an attorney was sued by a former client with three days remaining on the attorney's malpractice insurance policy, which was a "claims made and reported" policy. *Id.* at 930. The former client did not serve notice of the lawsuit until after the expiration of the attorney's malpractice insurance policy, but the attorney nevertheless received actual "notice" of the suit the day it was filed when the attorney received a call from a reporter asking for a comment. *Id.* The attorney considered the call to be a prank and ignored it, instead leaving for a vacation and finding upon return that the lawsuit was legitimate. *Id.* at 931. The attorney notified the insurer immediately once he discovered the lawsuit was pending, but the insurer denied coverage due to the failure to report during the policy period. *Id.*

The court in *Root* held that the attorney's non-compliance with the strict reporting requirements in the malpractice policy was excusable. *Id.* at 948. In applying California law to the attorney's claim that coverage was wrongfully denied, the court first acknowledged the soundness of the rejection of the notice-prejudice rule in the context of "claims made and reported" policies. *See id.* at 936-39, 947. Nevertheless, the court distinguished the facts of the case from *Pacific Employers* and *Slater* because in those cases the insured party had waited months to provide notice to the insurer of the underlying claims for which coverage was sought, yet in *Root* the attorney covered under the malpractice policy provided notice the same day the attorney learned that the lawsuit against him was real. *See id.* at 936-37, 947. The court also placed great weight on the fact that the attorney's malpractice policy did not provide the attorney with any grace period to report claims following the expiration of the policy period. *Id.* at 948. For these reasons, the court applied the general equitable rule that "conditions in insurance policies could be excused under traditional contract forfeiture rules" and held that the attorney's peculiar situation was one that required equitable excusal of the attorney's reporting obligations. *See id.* at 941-42 (citing *O'Morrow v. Broad*, 27 Cal. 2d 794 (1946)). Most importantly, from the outset of the opinion the court in *Root* "emphasize[d] the narrowness of today's decision" and acknowledged the highly distinguishable facts it was presented in that case that compelled against strict adherence to the reporting requirements in the policy. *Id.* at 929; *see also id.* at 948 ("Sometimes—indeed most of the time—it will

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA | | |

not be equitable to excuse the non-occurrence of the condition, so it is not excused."). The court continued:

> We will take great pains to show that by no means do we blanketly apply a blunderbuss "notice-prejudice" rule to this, or any other claims made and reported malpractice policy . . . In fact, we will devote some space to explaining why the notice-prejudice rule sweeps much too broadly in the context of claims made and reported policies and should not be applied here. (On this point we will thus agree with existing case law.) Even so, there are at least a few times when the established common law of contracts (bearing on when the non-occurrence of a condition precedent works a forfeiture) may operate to excuse the non-occurrence of a condition, and this case is one of them.

*Id.* at 929-30.

     Plaintiff argues that "[t]he facts in *Root* are particularly similar and instructive" to Plaintiff's situation, because Defendant's act of denying coverage amounts to an inequitable forfeiture of coverage under the parties' bargained-for insurance contract. *See* Dkt. 13 at 13. But here, Plaintiff waited a substantial amount of time to report the Subpoena and the Whistleblower Action without substantial justification. As noted above, the DOJ's letter accompanying the Subpoena on June 9, 2015 allowed for Plaintiff to ask the DOJ if Plaintiff could report the existence of the claims to Defendant so that Plaintiff would not be denied insurance coverage, but Plaintiff did not seek the DOJ's approval at any time. Moreover, unlike the claims made and reported policy at issue in *Root*, the Policy did provide Plaintiff with a grace period of 90 days in which Plaintiff can report claims made during the Policy Period even after the Policy expires. The situation at issue in this case is nothing like the unusual facts the court was presented in *Root*, and the Court finds that there is no equitable justification to excuse the enforcement of the clear condition precedent to coverage under the Policy due to Plaintiff's misreading of the DOJ cover letter without taking any initiative to ensure that Plaintiff would be covered under the Policy.

     Even if the Court were to accept Plaintiff's reliance on its own subjective (and incorrect) interpretation of the DOJ cover letter accompanying the Subpoena as reasonable, that still does not excuse the substantial delay in seeking coverage for the Subpoena and the Whistleblower Action after Plaintiff received the letter from the DOJ on January 5, 2017 closing the criminal investigation. Instead of reporting the Subpoena and the Whistleblower Action to Defendant immediately, which is what the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | *PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA* | | |

attorney in *Root* did upon learning of the legitimacy of the lawsuit against him, Plaintiff instead chose to wait for over four months to seek coverage from Defendant. During that time, Plaintiff settled the claims against it in the Whistleblower Action without Defendant's knowledge or consent. To hold Defendant equitably liable for that settlement amount would be far more inequitable than the "forfeiture" of Plaintiff's coverage for the Subpoena and the Whistleblower Action based on Plaintiff's idleness and disregard for the Policy's reporting requirements. Other courts have come to the same conclusion that *Root* does not apply where the insured party waited months to seek coverage under a claims made and reported policy. *See, e.g.*, *Citrus Course Homeowners Ass'n v. Great. Am. Ins. Co.*, No. EDCV 15-2443 JGB (KKx), 2016 WL 7496761, at *7 (C.D. Cal. Jan. 7, 2016) (distinguishing *Root* on the facts and holding that the insurer's eight-month delay in reporting a claim under the policy was inexcusable); *World Health*, 612 F. Supp. 2d at 1098 (N.D. Cal. 2009) (same result for a delay of 213 days); *Fashion Life*, 2010 WL 11519367, at *3 (rejecting the application of *Root* to an insured that knew of the existence of a claim within 30 days after the end of a policy period but failed to report the claim within the 90-day reporting grace period provided by the policy).

       Plaintiff's citation to *Oakland-Alameda County Coliseum* also does not change the result in this case. There, the court denied summary judgment to a primary insurer on the question of whether the insured party was entitled to equitable excusal from the reporting conditions required in the insurance policy, on the basis that the insured party's noncompliance with the reporting requirements was *de minimis*. *Oakland-Alameda Cnty. Coliseum, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 480 F. Supp. 2d 1182, 1193 (N.D. Cal. 2007). The "claims made and reported" policy provided that the policy period lasted until "July 31, 1997 (12:01 A.M., standard time . . . )." *Id.* at 1186. The insured party notified the primary insurer of a claim on July 31, 1997, but after the 12:01 a.m. deadline. *Id.* The court analyzed the insurance contract and found the 12:01 a.m. deadline to be unambiguous, but nevertheless believed that summary judgment was inappropriate "in light of [the insured]'s *de minimis* noncompliance with the notice provision" and based on the existence of "sufficient factual questions regarding the possibility of equitable excusal." *Id.* at 1189-90, 93. Here, on the other hand, Plaintiff has not pointed to any facts other than the DOJ cover letter accompanying the Subpoena that conceivably could support a finding of equitable excusal of Plaintiff's delay of over 22 months in reporting the Subpoena after being served with the Subpoena and a delay of over 16 months in reporting the Whistleblower Action after it became unsealed. Because Plaintiff's reporting delay led to a resolution of the underlying Whistleblower Action without Defendant's involvement, Plaintiff's delay was clearly more than *de minimis* as in *Oakland-Alameda County Coliseum*.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA | | |

Accepting all of Plaintiff's factual allegations in the Complaint as true, the Court holds as a matter of law that equitable excusal of the reporting requirements serving as a condition precedent in the Policy is not warranted under the circumstances. Accordingly, dismissal of Plaintiff's cause of action for breach of contract is appropriate. *See Citrus Course*, 2016 WL 7496761, at *8 (dismissing breach of contract claim on a motion to dismiss where the insured party raised the issue of equitable excusal); *World Health*, 612 F. Supp. 2d at 1098-99 (same).

### B. Breach of Implied Covenant

A claim for breach of the implied covenant necessarily requires that the insurer withheld benefits from the insured party without proper cause. *See, e.g.*, *Kardly v. State Farm Mut. Auto. Ins. Co.*, 31 Cal. App. 4th 1746, 1752 (1995) ("When an insurer unreasonably and in bad faith withholds payment of its insured's claim, it is subject to liability in tort.") (citation omitted). However, "[w]here benefits are withheld for proper cause, there is no breach of the implied covenant." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990); *see also Kardly*, 31 Cal. App. 4th at 1752 ("There is no tort [for bad faith denial of insurance] . . . if the insurer refuses policy benefits with proper cause.") (citations omitted). "It is clear that if there is no *potential* for coverage . . . under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36 (emphasis in original).

As stated above, Plaintiff cannot maintain a breach of contract regarding Defendant's denial of coverage for the Subpoena or the Whistleblower Action as a matter of law. Because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing necessarily depends on a finding that coverage under the Policy was required but wrongfully denied, this claim also fails as a matter of law. Therefore, Plaintiff's second cause of action is DISMISSED.

### C. Declaratory Relief

Because the Court finds as a matter of law that Plaintiff cannot assert a plausible claim for relief under either a contract theory or an implied covenant theory, Plaintiff is not entitled to the declaratory relief Plaintiff seeks as a matter of law. Plaintiff's third cause of action is therefore DISMISSED.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-06001-SVW-AS | Date | February 12, 2019 |
|---|---|---|---|
| Title | PAMC, Ltd. v. National Union Fire Insurance Company of Pittsburgh, PA | | |

**IV.   Leave to Amend**

Where a complaint is dismissed, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Courts have found amendment of a claim for denial of insurance coverage under a "claims made and reported" policy to be futile in light of a clear violation of the insurance policy's reporting requirements, even where the insured party argued that it should be equitably excused from the conditions in the insurance policy. *See Citrus Course*, 2016 WL 7496761, at *6-7 (C.D. Cal. Jan. 7, 2016) (rejecting proposed amendments to the complaint as futile because the court concluded as a matter of law that the claims were covered during a particular policy period and that the insured party did not satisfy the reporting requirements of that policy); *World Health*, 612 F. Supp. 2d at 1096 (dismissing claims without leave to amend based on the insured party's failure to satisfy the unambiguous reporting requirements of the insurance policy).

The Court finds *Citrus Course* and *World Health* to be instructive and applicable to the present facts. Accepting the facts as alleged in the Complaint, Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail as a matter of law. Any amendments to Plaintiff's Complaint would be futile and would not affect the legal determinations in this Order. Therefore, the Complaint is DISMISSED with prejudice and without leave to amend.

**V.   Conclusion**

For the reasons set forth above, Plaintiff's Complaint fails to state a plausible claim for relief as a matter of law. Accordingly, the Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | PMC |